CARRIE D. LINDSAY, ADMINISTRATRIX OF DAVID B. DUNHAM, PLAINTIFF IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY ET AL., DEFENDANTS IN ERROR.

Submitted December 6, 1909—Decided February 28, 1910.

1. The plaintiff's intestate, in attempting to cross a railway at a street crossing, was killed while on the first of four lines of tracks. When on the sidewalk about fifteen feet from the crossing he stopped and looked in the direction from which trains using the first line of tracks usually came, and then proceeded to walk across without making any further observation, although he could have done so effectively at least four feet before going on the track. When near the second rail of the first line of tracks he turned to look towards a coming train, but was instantly struck by it.  If he had looked before going on the track he would have seen the train and avoided the accident.  *Held*, that he was bound to look from a point where it would be effective just before going upon the track, and that his neglect to do so contributed to the accident.

2. The negligent conduct of the railroad company in not giving the statutory warning, or in not lowering gates at a crossing does not absolve a person from the exercise of that due care and caution which is required from one going into a place of danger.

---

On error to the Supreme Court, Union County Circuit.

For the plaintiff in error, *Robert L. Lawrence.*

For the defendants in error, *Alan H. Strong.*

The opinion of the court was delivered by

BERGEN, J. Plaintiff's intestate was killed while attempting to cross the railway tracks of the Pennsylvania Railroad Company at Milton avenue, in the city of Rahway, and this suit was brought against that company, and the engineer driving the engine which struck and killed the deceased, to recover damages therefor. At the close of the plaintiff's case a nonsuit was ordered and judgment for defendants entered, which this writ seeks to review.

The defendant company's line of railway at the place of the accident consisted of four tracks crossing Milton avenue at an angle of fifty-eight degrees, and on the day of the accident deceased, walking along the north side of the avenue, approached the crossing from the west, on which side of these tracks the company had a waiting-room and a platform which extended to the north side of Milton avenue. In coming from the west there is a short distance within which the waiting-room building intercepts the view to the north, but at least four feet before reaching the first rail an unobstructed view can be had along the track to the north for a considerable distance. The two westerly tracks running nearest the platform are used, ordinarily, by trains coming from the north, and deceased was killed between the rails of the most westerly track while nearest the east rail. Deceased was very familiar with this crossing, having passed over it three or four times daily for many years when going between his home and his place of business, and it is to be presumed knew that the track he first went upon was used by trains coming from the north. The statutory signals were not given, nor were the gates at the crossing lowered, although put there by the company to prevent persons from crossing in front of approaching trains. A baggage truck with baggage on it was standing on the platform towards the southerly or Milton avenue end, and a number of passengers were standing on different parts of the platform, but this did not intercept the view of the deceased along the tracks to the north before going upon them,

nor prevent an effective observation in that direction while he was in a safe position. Five persons were called who saw the accident and describe the conduct of the deceased.

Ferdinand Graves, a hack driver, testifies that he was in his hack along the westerly side of the platform and about fifteen feet north of Milton avenue; that deceased stopped some ten or fifteen feet before reaching the point where his view to the north would be obstructed by the passenger-room, and looked towards the direction from which a train from New York would approach; that deceased then started to walk towards the track, and when he passed behind the station, and beyond witness' view, witness, who expected to be engaged to drive deceased, left his carriage, walked across the platform to see whether deceased would come towards him along the platform or cross the track, and saw him stepping on the track to cross over; that witness heard the sound of a whistle, and as he stepped back saw the train strike the deceased. There is nothing in this testimony to show that the deceased made, or attempted to make, any observation after he had come from behind the station and reached a point where his observation would be effective.

William E. Freeman saw the deceased in the middle of the tracks just as he was struck; he was facing straight across the tracks, and witness did not see him turn to look at the train at any time. This testimony is of very little importance, because the witness did not see deceased until he was partly over the track, at about the moment he was killed, and throws no light upon the question whether any observation was made, or care exercised by deceased before he ventured into a dangerous place.

Two other witnesses, Michael Gettings and Isaac B. Crew, were in a wagon on Milton avenue approaching the crossing from the other side of the track and were facing deceased. Gettings said that he saw deceased just as he was starting to cross, and that he was walking along looking straight ahead. Crew testifies that he saw deceased approach the crossing and step on the track; that while crossing he looked one way, and

just as he was going to look the other way he was struck, but this was after he had gone into the place of danger from which he could not escape in time to avoid injury. It was his duty to look before he went on the track, and not wait until observation could be of no possible use, for he did not attempt to look, according to this witness, until the train was upon him. *Gehring v. Atlantic City Railroad Co.,* 46 *Vroom* 490.

The remaining witness, Edward G. Abbott, did not see the deceased until just at the time he was struck, the attention of the witness being called to the place where deceased was, by the sound of the whistle, as he was struck.

As the uncontradicted testimony shows that the deceased, by the exercise of ordinary prudence and reasonable observation at a time when it would have been effective, could have seen the train before he went upon the track, and there being no proof that he exercised ordinary care and prudence, or made any attempt to ascertain whether it was safe to go upon the track when he did, it seems to be a plain case of contributory negligence, the result, perhaps, of the constant use of this crossing by deceased, and a familiarity with the situation which lulled his appreciation of the danger and made him careless about exercising the prudence required in such a case. It also appeared that the deceased was deaf, or as the witness said, "hard of hearing," and that "it grew on him from middle life." This loss, or partial loss, of one of his senses, increased his obligation to be cautious, and "reasonable prudence would dictate delay until such observation as is requisite has been made." *Newark Passenger Railway Co. v. Block,* 26 *Vroom* 605; *Central Railroad Co. v. Smalley,* 32 *Id.* 277.

That the failure to give a warning or to lower crossing gates does not absolve one attempting to cross a railway track from the exercise of care and prudence, is too well settled in this state to require the citation of authorities.

The nonsuit was properly ordered, and the judgment under review is affirmed.

*For affirmance*—THE CHIEF JUSTICE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, VREDENBURGH, GRAY, JJ.  9.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, BOGERT, VROOM, CONGDON, JJ.  6.