WATERSON, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*October 26—December 5, 1916.*

*Railroads: Injury to person at street crossing: Negligence: Contribu-*
*tory negligence: Duty to look and listen: Gates: Flagman: In-*
*vitation to cross: Questions for jury.*

1. In an action for injuries to a person who was struck by an engine
   at a railway street crossing in a city, if the speed of the engine
   did not exceed that prescribed by sec. 1809, Stats., and the only
   negligence on the part of the defendant railway company was
   the failure of the flagman to give reasonable warning, a lack of
   ordinary care on the part of plaintiff is a complete defense.
2. The rule requiring a traveler on a highway, when he approaches
   a railway track, to look and listen at the last opportunity
   before entering the zone of danger does not apply to its full ex-
   tent where an affirmative invitation to cross is given by the rail-
   way company.
3. As plaintiff approached, at night, the place where a city street
   crossed three railway tracks he saw the gates were up, with
   lighted lanterns hanging on them as if they were in use. Freight
   cars were standing on the first track, and as he passed these he
   looked in both directions but did not see or hear anything ap-
   proaching. As he was crossing the third track he was struck by
   an engine which was running backwards. The gates were, in
   fact, not in operation, and a flagman stationed at the crossing
   gave no warning until plaintiff was very close to the third track.
   *Held,* that it was a jury question whether plaintiff was negli-
   gent in not continuing to look until he had crossed all the tracks.

APPEAL from a judgment of the circuit court for Milwau-
kee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Personal injuries. The action was brought in the civil
court of Milwaukee county. The plaintiff was struck by a
switch engine operated by the defendant while he was cross-
ing its tracks at their intersection with Vliet street in the city
of Milwaukee. Vliet street runs east and west, and the de-
fendant maintains three tracks which cross the street in a
northeasterly and southwesterly direction. The easterly
track is a sidetrack, and box freight cars stood upon it close to

the walk on the north side of Vliet street. The other two
tracks are main tracks, the center track being used for north-
bound traffic and the westerly track for south-bound traffic.
The plaintiff, an adult, approached the tracks from the east
at about 1 o'clock a. m. on the north side of Vliet street. He
was accompanied by two adult companions with whom he was
talking. The distance from the westerly rail of the sidetrack
to the westerly rail of the westerly track is about forty-four
feet. Gates are maintained at this crossing, but they were
not in operation on the night in question because the gateman
(who regularly operated the gates by means of an air pump
from a small tower) was ill, and a flagman with a lantern was
sent to the crossing to warn passengers of approaching
trains. The night was very dark. As the plaintiff ap-
proached the crossing the gates were up with lighted lamps
hanging upon them. Plaintiff testified that as he passed the
box cars he noticed that the gates were up and that the lamps
were lighted; that he saw no flagman, heard no signals; that
he looked north just as he passed the box cars and then looked
south and saw nothing coming, and did not look again; that
he heard no engine approaching, but just as they were cross-
ing the last or westerly track one of his companions shouted
and the engine approaching from the north was upon them
and they all jumped, and the coal box of the tender struck the
plaintiff in the back. The plaintiff's companions testified
that they noticed the gates were up, that they looked to north
and south after passing the box cars and saw no train, and that
they heard no warning until just as the engine was upon them.
One testified that he saw the flagman walking over toward a
saloon, but the other testified that he saw no flagman. There
was evidence on the part of the plaintiff that there were no
lights on the engine and that no bell or whistle was sounded
as the engine approached the crossing. On the part of the
defendant there was testimony that after passing the box cars
the engine could be seen about 900 feet to the north; that the
engine was running backwards, and that as it approached the

crossing its bell was ringing, and that it had on the back of the tender a regular headlight with two red lights lighted; that the whistle was blown about 300 feet from the crossing. The flagman testified that he hollered to the men as they were crossing the easterly main track and again just before they were struck. The jury returned the following special verdict:

"(1) Was the plaintiff injured by being struck by defendant's switch engine at the time and place alleged in the complaint? *A.* (by the court, by consent of counsel). Yes.

"(2) At what rate of speed was the engine going at the time it struck the plaintiff? *A.* Twenty miles.

"(3) If in answering question 2 you find the speed to have been greater than thirty miles per hour, then answer this question: Was such speed the proximate cause of plaintiff's injury? *A.* ——.

"(4) Was the plaintiff guilty of gross negligence in attempting to cross said tracks under the circumstances? *A.* No.

"(5) Did the man acting as flagman give reasonable warning to the plaintiff of the approaching train? *A.* No.

"(6) If you answer question 5 'No,' then answer this question: Was such failure to give reasonable warning the proximate cause of plaintiff's injury? *A.* Yes.

"(7) Ought the plaintiff to have either seen or heard the engine in time to have avoided coming in contact with it? *A.* No.

"(8) Was the plaintiff guilty of any want of ordinary care which proximately contributed to his injury? *A.* No.

"(9) If the court should be of the opinion that plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $1,000."

The civil judge changed the answers to questions 7 and 8 from "No" to "Yes" and entered judgment for the defendant. Upon appeal the circuit court restored the verdict as returned by the jury, reversed the judgment, and entered judgment for the plaintiff upon the verdict, from which judgment this appeal is taken.

For the appellant there was a brief by *C. H. Van Alstine,*

*H. J. Killilea,* and *R. M. Trump,* and oral argument by *Mr. Trump.*

For the respondent there was a brief by *Lehr & Kiefer,* attorneys, and *J. Elmer Lehr,* of counsel, and oral argument by *J. Elmer Lehr.*

WINSLOW, C. J.    Sec. 1809, Stats., provides, among other things, that if a railroad company "shall erect, maintain and operate" gates at a city highway crossing, or "shall maintain a flagman thereat," it may run a train or locomotive at a speed not exceeding thirty miles an hour over such crossing, otherwise not at greater speed than twelve miles an hour, unless it maintains an electric alarm bell at the crossing, in which case the speed may be not exceeding twenty miles an hour.    The section further provides that, if injury or death is caused by failure to comply with these provisions, slight want of ordinary care on the part of the person killed or injured shall not bar a recovery.

Assuming, without deciding, in the present case that the defendant satisfied the requirements of the statute by placing a flagman at the crossing when the gates were not in operation and hence was guilty of no negligence in operating its locomotive at any speed not exceeding thirty miles an hour, then the only negligence shown or found on the part of the defendant is the negligence of the flagman in not giving reasonable warning of the approach of the engine, and as against such negligence the lack of ordinary care on the part of the traveler is a complete defense.

The crucial question, therefore, is whether such a lack was shown as matter of law or whether the question was one for the jury.

The appellant relies upon the well established principle that it is the duty of a traveler to look and listen when he approaches a railway track at the last opportunity before entering the zone of danger, and that such a circumstance as

gates being raised, which are customarily lowered when a train is about to pass, does not excuse failure to perform his duty.  *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148, and cases cited.

The civil judge applied this rule to the case and held that the evidence demonstrated that the plaintiff did not look at the last opportunity before entering the zone of danger.

We have no disposition to question this rule, but surely it cannot apply to its full extent where an affirmative invitation to cross is given to the traveler by the railroad company.  If one approaches a crossing where a flagman is stationed and there are a number of tracks and receives from the flagman a signal to cross, he certainly cannot be obliged to exercise the same abundant caution until he has crossed the last track that he would if he had received no signal.  If so, why have the flagman at all?  In the present case the facts were not merely that the gates were up, but that there were lanterns hanging on them just as if they were in use.  The plaintiff testified that he saw these lanterns.  They doubtless conveyed the impression to his mind that the gates were in operation but were elevated because no train was approaching.  The flagman gave no warning until the plaintiff was very close to the track on which the engine was approaching.  Under such circumstances it seems to us that the plaintiff might well believe that an affirmative assurance of safety had been given him by the railroad company and that ordinary care did not require him to look in either direction after his first look when he passed the freight car.  We are not to be understood as intimating that the plaintiff could be excused from looking at least once as he entered upon the crossing, but after having so looked and seeing nothing, we think it was fairly a jury question whether ordinary care required him to keep on looking until he had crossed all the tracks, in view of the seeming assurance of safety which the uplifted gates bearing lanterns and the lack of warning by the flagman gave him.

We think the testimony of the plaintiff that he did look as soon as he passed the freight car and saw nothing is not incredible in view of the other testimony in the case as to the lack of lights on the engine and signals therefrom.

*By the Court.*—Judgment affirmed.