[No. 16562. Department One. January 27, 1922.]

WILLIAM RAY, *Respondent,* v. WALKER D. HINES, *as Director General of Railroads, Appellant.*[1]

RAILROADS (64)—ACCIDENTS AT CROSSING—CONTRIBUTORY NEGLI-GENCE. Where it is customary at a railroad crossing over a city street to signal the movement of trains about to cross, an automobile driver who continues his course along the street in reliance upon the customary signal being given, and in the absence of any apparent danger, would not be chargeable with contributory negligence as a matter of law in case of a collision between his automobile and the train.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered July 7, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*A. C. Spencer* and *Hamblen & Gilbert,* for appellant.
*Charles P. Lund,* for respondent.

TOLMAN, J.—This action was instituted by respondent, as plaintiff, to recover for personal injuries and damage to his automobile, resulting from a collision between the automobile driven by respondent and a

[1]Reported in 203 Pac. 929.

train operated on the Oregon-Washington Railway &
Navigation Company's tracks in the city of Spokane
by the director general of railroads.  From a verdict
in respondent's favor for $1,500, and a judgment en-
tered thereon, appellant brings the case here for re-
view on appeal.

The assignments of error raise the single question
of the sufficiency of the evidence to sustain the verdict,
necessitating a brief statement of the facts as the jury
may have found them to exist.

Shortly after 10 o'clock p. m., on July 28, 1918, re-
spondent was driving a five-passenger Pan touring car
north on Division street, a paved north and south
street in the city of Spokane.  The street is sixty feet
wide from curb to curb, the center being occupied by
a double line of street car tracks.  At the point of the
accident, the Oregon-Washington Railway & Naviga-
tion Company maintains a switch track which crosses
Division street from the southwest to the northeast,
and across this track, but outside of the street lines,
gates are so located that before a train may cross the
street it must come to a full stop and the gates be
opened before it can proceed.  No flagman or watch-
man is stationed at this crossing, but it is customary
for a switchman to get off the train as it comes to a
stop, proceed ahead to unfasten and open the gates and
give a warning signal to travelers on the street while
passing across from gate to gate.

As respondent approached this crossing, he was
driving at a speed of about fifteen miles per hour; the
night was cloudy and dark; his headlights were burn-
ing, throwing a direct light some seventy-five feet in
advance of his car, but not revealing objects on either
side to any considerable extent.  There was an arc
light maintained by the city over the center of the

street some fifty feet to the south of the crossing, but respondent's witnesses, while not positively denying that this light was burning at the time, all say that they did not notice or observe it, and rather stress the idea that it was unusually dark for that time and place. As respondent approached the crossing under these circumstances, a switch engine backing from the east and pushing some fourteen box cars was proceeding slowly westerly. As the train approached the easterly gate it stopped, the gate was opened, and according to one of respondent's witnesses, the switchman proceeded across the street toward the westerly gate, swinging his lantern, and disappeared from view. Respondent testified that he saw no signal of any kind, heard no sound, and was wholly unaware of the presence of the train until the instant of the collision, and all of his other witnesses testifying in harmony with him. Respondent proceeded without any slackening of speed along the middle of the east side of the street, keeping a lookout straight ahead upon the roadway as revealed by his headlights, and as he reached the crossing, the dead end of the first box car of the switch train loomed up suddenly and silently out of the surrounding darkness and instantly, before he had time to swerve his car, increase his speed, or do any other act for his own protection, struck his automobile, inflicting the injuries for which he sues, and fatally injuring a companion who was riding with him.

The jury may have disbelieved the evidence of the one witness as to the switchman having crossed the street swinging the lantern before the train entered the street, or, it may have determined that the signal, if given, was given so long before the accident that respondent had not yet reached a point where he could or would be likely to have seen it. There is nothing in

the testimony which establishes the fact that the signal, if given, was given at a time when respondent was in such proximity to the crossing that reasonable prudence required that he be then looking with a view of determining whether he should stop or proceed. It is admitted by the pleadings that it was the duty and custom of appellant to give a warning by flag or lantern signal of the approach of trains at this crossing, and respondent is shown to have been entirely familiar with the conditions, and the jury may have found rightfully that he relied to a considerable extent upon this custom. True, as to the giving of the lantern signal, the evidence was conflicting, and appellant's witnesses testified to the giving of ample and timely warning by the switchman; but the evidence being in conflict, the question was for the jury, and their verdict establishes that no timely signal was given. What then is the law?

"Where a flagman is employed or a gate established, whether such duty is imposed by statute or not, the person in charge is bound to perform his duties with reasonable care and prudence, and a failure to do so is negligence for which the railroad company is liable. Where a flagman or watchman is employed at a public highway crossing, until the public has become accustomed to regard his presence or absence as one of the evidences of the approach of trains, or otherwise, it is part of the company's duty to keep a fit person there whose conduct will not be liable to mislead and deceive the traveling public; and it is the duty of the flagman or watchman to use reasonable care to know and give timely warning of the near approach of trains, not only so as to avoid a collision, but also to enable a traveler approaching a crossing, in the exercise of reasonable care, to protect himself against other accidents, and the public have a right to rely upon a reasonable performance of that duty. The public have a right, when the gates are open, or the flagman not in his accustomed place of duty, to presume, in the ab-

sence of knowledge to the contrary, that the gateman or flagman is properly discharging his duties, and it is negligence for a gatekeeper or flagman to leave his post, knowing that an engine is approaching, without giving some signal of danger. If the flagman or watchman neglects to give any warning, or does not give a warning until the traveler is in great danger, especially where the view of the approaching train is obstructed, and no signals are given by it, the railroad company is responsible. Where gates are established, although there is no statute requiring their maintenance, it is negligence if they are not constructed, attended, and maintained, with ordinary care and prudence, so as to give the proper warning of an approaching train, or so as not to injure a passer-by by the manner in which they are maintained or closed. Likewise it is negligence to leave them open when trains or cars are passing, except as to one who sees the train going in front of him, and the mere fact that the flagman signaled the person injured not to cross does not free the railroad company from negligence, unless such signal is given in time for such person by the exercise of reasonable care to avoid the injury." 33 Cyc. 946.

Whether the flagman be stationed at the crossing, or the custom be established of giving a warning by the men in charge of the movement of trains across the street, the result is the same. In either case the public is led to expect the warning if there be imminent danger, and the failure to give the customary warning tends to mislead and deceive. In fact, such failure becomes in effect a trap.

There are not wanting cases which hold that the traveler cannot entirely rely upon signals and the performance of duty by a flagman, but must also seek to safeguard himself by the use of his faculties and other means at hand. *Cadwallader v. Louisville N. A. & C. R. Co.*, 128 Ind. 518, 27 N. E. 161; *Waterson v. Chicago, M. & St. P. R. Co.*, 164 Wis. 375, 160 N. W. 261; *Fogg v. New York, N. H. & H. R. Co.*, 223 Mass. 444, 111 N.

E. 960; *Delaware, L. & W. R. Co. v. Welshman,* 229 Fed. 82; *Brommer v. Pennsylvania R. Co.,* 179 Fed. 577; *Lindsay v. Pennsylvania R. Co.,* 78 N. J. L. 704, 75 Atl. 912; *Kentucky & I. Bridge & R. Co. v. Singheiser,* (Ky.) 115 S. W. 192. See, also, *Swigart v. Lusk,* 196 Mo. App. 471, 192 S. W. 138; and *Philadelphia & R. R. Co. v. Le Barr,* 265 Fed. 129.

While we agree that the failure of the flagman to give the customary warning does not warrant the traveler in rushing into a danger that is open and apparent to him, yet we cannot go to the extent of holding that, in the absence of such apparent danger, he may not rely upon the failure to give the customary signal and proceed without that degree of care which would be required at an unflagged crossing, without being guilty of contributory negligence as a matter of law. When the facts upon which they are based are carefully analyzed and considered, it will be found that a goodly portion of the cases just cited go no further than this, and we think that the following authorities clearly support our view: *Wolcott v. New York & L. B. R. Co.,* 68 N. J. L. 421, 53 Atl. 297; *Dolph v. New York, N. H. & H. R. Co.,* 74 Conn. 538, 51 Atl. 525; *Montgomery v. Missouri Pac. R. Co.,* 181 Mo. 508, 79 S. W. 930; *Chicago & A. R. Co. v. Blaul,* 175 Ill. 183, 51 N. E. 895; *Roby v. Kansas City S. R. Co.,* 130 La. 880, 58 South. 696, 41 L. R. A. (N. S.) 355.

The evidence justifying the finding made by the jury that the customary signal was on this occasion omitted, sustains the charge of negligence on the part of the appellant and precludes a holding that respondent was guilty of contributory negligence as a matter of law. The judgment therefore must be, and is, affirmed.

PARKER, C. J., FULLERTON, BRIDGES, and MITCHELL, JJ., concur.