Kasky v. Baltimore & Ohio Rd. Co.

*Negligence—Failure to stop, look and listen upon crossing railroad tracks—Contributory negligence question for jury, when—Crossing gates up and no warning given by watchman—Error to direct verdict for defendant, when.*

The general rule that a pedestrian traveling along a public street in a city is guilty of contributory negligence, as a matter of law, if, without stopping, looking, and listening, he goes upon a railroad track intersecting said street, does not apply to a crossing where the railroad company maintains safety gates and a watchman; and in such case, where the gates are up, and the watchman, being present, does not give warning of impending danger, it is a question for the jury to determine whether or not, under all the circumstances, the pedestrian, being hit by a passing train, is guilty of contributory negligence; and it is error for the trial court to direct a verdict for defendant on the sole ground that the failure of the pedestrian to stop, look, and listen is negligence, as a matter of law.

(Decided October 16, 1926.)

Error: Court of Appeals for Lorain county.

*Messrs. Fauver & Fauver* and *Mr. Samuel Deutsch,* for plaintiff in error.
*Mr. H. C. Johnson,* for defendant in error.

Pardee, P. J. The parties stand in this court in the same relative position as they did in the court below, and for convenience will be referred to as plaintiff and defendant.

The action in the trial court was one for money, brought by the plaintiff to recover compensation from the defendant for an accident which she suffered when she was hit by one of the trains of

the defendant, on the 9th of April, 1925, when she attempted to cross Lake avenue in the city of Elyria at the place where the tracks of the defendant cross that avenue at grade.

Lake avenue is a public street in said city, extending in a northwesterly and southeasterly direction, and the tracks of said company run in a northerly and southerly direction.

The defendant, for some time prior to the date of the accident, maintained a watchman's tower on the north side of said avenue, adjacent to its tracks and on the easterly side of its right of way, and also maintained safety gates at said crossing, which were operated from said tower. Many trains are operated daily over said crossing, and it has been continuously used by pedestrians and vehicles passing upon said avenue.

The plaintiff, a woman 22 years of age, was an employee of a factory located on the southwest side of the company's tracks, and for some time prior to the accident had daily at about 7 a. m. taken a street car, at a point in Elyria, to go to said factory. The tracks of the street car line are in the center of the avenue and cross the railroad tracks in about the same relative position as it does. The street car stopped on the east side of the tracks of defendant to permit the plaintiff and other passengers, employees of said factory, to alight therefrom.

On the morning of the accident, the plaintiff got off the front entrance of the car after the same had been stopped about 25 feet east of defendant's tracks. Before she alighted from the car she looked to the north, and after she was upon the ground she again looked to the north, and saw no train

approaching. She then proceeded from the street car towards the tracks of the defendant, where she looked to the south before going upon the tracks of defendant, and as she looked to the north again, she was struck by a train of the defendant coming from the north.

The plaintiff testified that at the time she left the car, the gates were not lowered, but were in an upright position, and that she saw the railroad watchman, who was present, standing on the street curb north of the trolley tracks near the tower, with his face to the southwest, resting his warning disc on the ground and talking with another person. The evidence shows that no bell was rung, nor whistle blown. The engine, with a car and caboose, was coasting backwards towards the south across said street, without any guard or watchman on the caboose, it being in front and the first to cross said street. At or near the point where the plaintiff alighted, her view to the north might have been partially obstructed by two telegraph poles and the watchman's tower. The plaintiff further testified that she knew the gates were there prior to the day of the accident, and had seen them raised and lowered when trains passed over the crossing, as they were in everyday use.

At the close of the plaintiff's testimony, upon motion of the defendant, the trial court directed a verdict for the defendant. A motion for new trial was filed and overruled, and judgment was entered upon the verdict in favor of the defendant. The case is now here on error to reverse that judgment.

The sole question presented for our consideration and determination is, Did the trial court err in

saying that, as a matter of law, the plaintiff, upon the evidence offered by her, was guilty of contributory negligence?

In deciding this question it is well to keep in mind the rule of law that applies when a motion is made to direct a verdict in favor of the defendant at the close of the plaintiff's case, and that is:

"Such a motion involves an admission of all the facts, which the evidence in any degree *tends* to prove, and presents only a question of law, whether each fact indispensable to the right of action and put in issue by the pleadings has been supported by some evidence. If it has, the motion must be denied, as no finding of facts by the court, or weighing of the evidence, is permitted."

It is also important to keep in mind in this connection another rule of law well established and fully recognized, and that is:

"Where there is no dispute or conflict in the testimony of different witnesses, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate facts shown by such evidence, then it is the duty of the jury to determine such ultimate fact, even though the trial judge should himself be convinced as to what the conclusion should be."

The motion of the defendant admits the plaintiff was injured at the place and under the circumstances as claimed by her; but the defendant claims, admitting its own negligence, the plaintiff was also guilty of negligence.

The duty rested upon the plaintiff to exercise that degree of care which pedestrians of ordinary caution and prudence are accustomed to exercise

under similar circumstances and conditions. So, what would an ordinary person do under such circumstances? Wouldn't he assume, when the gates were up and a watchman standing there indifferently, that he would have a safe passage and that there was no danger present? Wouldn't he be justified in assuming that this situation was a substantial assurance to him of safety and that he would be free from danger, in the absence of knowledge to the contrary?

But, assuming that the plaintiff saw the train, under the circumstances disclosed by the evidence she might have been justified in believing that the train had just crossed and that for that reason the gates were up and the watchman in the position he was. Or she might have thought that the train was standing still, or that it was moving southward and intended to stop before it reached the crossing.

The trial court, in passing upon this motion, applied the law which has been long established: That a person upon a public street, when approaching a steam railroad grade crossing, must look and listen for the approach of trains before crossing, and must do so at a time and place and in a manner that will be effective; also, that an injured pedestrian cannot claim to have looked and listened, when, if he had, the same would have been effective and would have prevented the accident. So, the question we have to decide is whether this rule applies in all its strictness to a city crossing which is guarded by safety gates and a railroad watchman, when the gates are open and the watchman is negligent in the discharge of his duties, and a pedestrian is injured by being hit by a train of the railroad company at said crossing.

The evidence in this case shows that the defendant was guilty of passive negligence in failing to ring its bell or give other notice to the plaintiff of the approach of the train, and it was also guilty of such conduct as would amount to an assurance of safety to the plaintiff and a direct and affirmative invitation to her to use the crossing, notwithstanding the train was then approaching. While this situation does not relieve the plaintiff of her duty to use ordinary and reasonable care for her own safety, it does materially affect the question of contributory negligence.

This question has been frequently before the courts of the several states and the United States Supreme Court, and almost without exception it has been held that facts similar to the ones disclosed by the record in this case present a question of fact to be determined by the jury, and that a trial court is incompetent to pass upon the same.

There is no doubt that the plaintiff was required to exercise ordinary care, and the test is what an ordinarily careful and prudent person upon a public street is accustomed to do in the presence of facts similar to the ones in the instant case, and this presents an entirely different situation from what an ordinarily careful and prudent person would do and the law would require him to do, if he were approaching a railroad crossing at grade at which no gates had been installed and no watchman was present. The plaintiff had full knowledge of the existence of the safety gates and that they were used in times of danger, as a warning to the public not to go upon the tracks, and she and others had a right to assume that the duty cast upon the defendant by the installation of

the gates would be performed, and she was under no obligation to anticipate that the defendant would be negligent in the discharge of those duties. The very purpose of the safety gates was to give warning in times of danger. When they are open, they are a token of safety, and, when closed, an evidence of danger. The open gates would signify to a man of prudence that no danger was present, and he would be confirmed in that belief by seeing the watchman standing near and giving no warning sign of danger.

In *Baltimore & Potomac Rd. Co.* v. *Landrigan,* 191 U. S., 461, 475, 24 S. Ct., 137, 141 (48 L. Ed., 262), Mr. Justice McKenna, speaking for the court, forcibly said: "Gates at a railroad crossing have a useful purpose. Open, they proclaim safety to the passing public; closed, they proclaim danger."

In *Glushing* v. *Sharp, Receiver,* 96 N. Y., 676, 677, the Court of Appeals held that the plaintiff's alleged contributory negligence was properly submitted to the jury under all the circumstances, and said: "The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him or invited him to come on, and that any prudent man would not be influenced by it is against all human experience."

In *Railway Co.* v. *Schneider,* 45 Ohio St., 678, 690, 698, 17 N. E., 321, 324, the court said: "To persons in the street who are approaching the railroad tracks with a view to crossing, an open gate is notice that the track is clear, and that it is safe to cross. * * * Persons approaching such crossings have the right to presume, in the absence of knowledge to the contrary, that the gatemen are

properly discharging their duty, and govern themselves accordingly, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties.''

In *Pennsylvania Co.* v. *Stegemeier, Adm'x.*, 118 Ind., 305, 310, 312, 20 N. E., 843, 845 (10 Am. St. Rep., 136), the court said: ''The case at bar is to be discriminated from those in which the injured person enters upon a track where there is no affirmative assurance of safety, for here the fact that the gates were up and no warning given by the flagman was an affirmative assurance of safety, upon which a citizen might act without being chargeable with negligence.  *  *  *  The deceased was not simply thrown off his guard, but he was also assured that there were no approaching trains, and this assurance dispensed with the vigilance that under other circumstances would have been required of him; this assurance, too, completely relieved him from the imputation of negligence in going upon the tracks.''

In *Evans* v. *Lake Shore & M. S. Rd. Co.*, 88 Mich., 442, 446, 50 N. W., 386, 387 (14 L. R. A., 223), the court said: ''It has been frequently held that when gates are provided the public have a right, the gates being open, to presume, in the absence of knowledge to the contrary, that the gatemen were properly discharging their duties, and that it was not negligence on their part to act on the presumption that they were not exposed to a danger which could only arise from a disregard of their duties by the gatemen.''

In *Roberts* v. *Delaware & Hudson Canal Co.*, 177

Pa., 183, 190, 35 A., 723, 724, the court affirmed, as correct, the proposition that:

"Safety gates which should be closed in case of danger, if standing open, are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances."

Upon the whole, we think it was for the jury to determine whether or not the open gates misled the plaintiff and to say whether she acted with that degree of care which persons of common prudence and intelligence would exercise when placed in a similar position. We are therefore unanimously of the opinion that the trial court was in error when it directed a verdict for the defendant and entered judgment thereon.

The judgment of the court of common pleas will be reversed, and the cause remanded to that court for further proceedings, as provided by law.

*Judgment reversed and cause remanded.*

WASHBURN and FUNK, JJ., concur.