15345

BROWN v. POWELL ET AL.

(18 S. E. (2d), 212)

*Messrs. Dargan & Paulling,* of Darlington, and *Messrs. Woods and Woods,* of Marion, for appellants,

*Mr. W. B. Norton, Sr.,* and *Mr. W. B. Norton, Jr.,* both of Marion, for respondents,

December 29, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER.

This is a suit instituted by the respondent in the Court below in her representative capacity as administratrix of the estate of Pharoah C. Brown, deceased, against the Receivers of the Seaboard Air Line Railway Company for the recovery of damages, both actual and punitive, alleged to have been suffered by respondent as the result of the destruction of an automobile owned and operated by her intestate at the time of its collision with a train of box cars then being owned and operated by the appellants. The collision out of which this action arose occurred at a point where State Highway No. 175 crosses the tracks of the appellants about 300 yards north of the Town of Centenary, in Marion County.

The allegations of appellants' negligence, recklessness and willfulness specified in the complaint are as follows:

(a) In leaving a train of box cars standing motionless, at night, across a much-traveled public highway for an unreasonable length of time; (b) in leaving a train of box cars standing motionless at night across a much-traveled public highway for a greater period of time than permitted by the statute laws of this State; (c) in failing to place lights in the said highway or on the said train so as to warn respondent's intestate, and the other traveling public of the presence of a train standing at night across the said much-used highway; (d) in failing to place a flagman or other employee at the said crossing to warn respondent's intestate, and the other traveling public of the presence of a train standing at night across the said much-used highway; (e) in failing to give warning by bell, whistle, or otherwise, of the said motionless train standing at night across the said much-used highway; (f) in permitting a train to be operated through the State of South Carolina without sufficient number of men

in its crew to furnish proper lights, signals, and warning to respondent's intestate, and others of the traveling public; (g) in failing to cut the said train standing across the said much used public highway so as to clear the same for respondent's intestate's automobile and other vehicular travel within a reasonable time.

The appellants in their answer admitted certain formal matter plead in the complaint, and also that a collision occurred between the automobile of respondent's intestate and the train of cars of the appellants, and that the automobile was demolished, but the appellants deny the remaining allegations set forth in respondent's complaint, and by way of affirmative defense plead that the collision was due to the contributory recklessness, willfulness, wantonness, and unlawful conduct of the respondent's intestate.

The case came on for trial before Honorable Wm. H. Grimball, presiding Judge, and a jury, at the November, 1940, term of the Court of Common Pleas for Marion County, and resulted in a verdict for respondent for both actual and punitive damages. At the conclusion of respondent's testimony, the appellants moved for a nonsuit upon the following grounds:

"(1) In no view of the case has the plaintiff established any right to recover punitive damages, and there is nothing upon which a verdict for punitive damages could properly be based.

"(2) There is a failure of any such evidence of either negligence or willfulness, wantonness or recklessness on the part of the defendant as would justify the submitting of defendant's alleged negligence or willfulness, wantonness or recklessness to the jury.

"(3) The only reasonable inference of which the testimony in the case is susceptible is that the plaintiff's intestate himself was guilty of such negligence, willfulness, wantonness or recklessness or of such gross or willful negligence as to defeat any right of the plaintiff to recover.

"(4) Because it appears from the evidence that if plaintiff's intestate had been driving at a lawful rate of speed he could have stopped upon seeing the train, whereas he drove up to the railroad crossing at a high, reckless, and dangerous rate of speed, in excess of that allowed by law, and such violation of law on his part was grossly negligent and reckless, and contributed to his injury as a proximate cause thereof."

The trial Judge overruled appellants' motion for a nonsuit, but withdrew from the jury's consideration, because of failure of evidence to support them, the specifications of negligence, willfulness, wantonness, and recklessness of the appellants in the particulars set forth in Paragraph 3 of the complaint, alleging (b) the blocking of the highway at night for a greater period of time than permitted under the law; (e) in failing to give a warning of the standing of the train of cars across the highway, and (f) in operating the train without a sufficient crew of men to furnish proper lights, signals, and warnings to the traveling public. The ruling of the trial Judge left for the consideration of the jury only the specifications contained in Paragraph 3 of the complaint, designated as (a), (c), (d), and (g). It will be noted that the specifications set forth in (e) and (g) in said paragraph are in effect the same, as both allege, in different wording, the blocking of the highway by appellants' train of cars.

The allegations of negligence, recklessness and willfulness remaining in the complaint may be stated as follows: (1) Blocking the highway for an unreasonable length of time; (2) failure to place lights to warn travelers on the highway; (3) failure to place a flagman or other employees to warn travelers on the highway.

The appellants, at the conclusion of all of the testimony, moved for a directed verdict upon the same grounds urged in the motion for nonsuit. This motion was overruled by the trial Judge, and the case submitted to the jury as to both actual and punitive damages.

Upon rendition of the jury's verdict, which found both actual and punitive damages in favor of the respondent, the appellants moved for a new trial, urging the same grounds upon which was based the motions for a nonsuit and a directed verdict, with the additional ground that the verdict of the jury was excessive. The trial Judge refused this motion

The appellants bring eighteen exceptions, but the questions raised are stated by the appellants to be as follows:

(1) Was there error in refusing appellants' motions for nonsuit and directed verdict based upon failure of proof of actionable negligence, willfulness, wantonness or recklessness?

(2) Was there error in refusing appellants' motions for nonsuit and directed verdict based upon contributory negligence and contributory willfulness, wantonness or recklessness?

(3) Was there error in refusing appellants' motions for nonsuit and directed verdict at least as to punitive damages, and in refusing to charge the jury as requested by appellants, that punitive damages could not be awarded?

(4) Was there error in refusing appellants' motion for new trial based upon insufficiency of proof of their alleged negligence, willfulness, wantonness or recklessness, the contributory negligence, willfulness, wantonness or recklessness of respondent's intestate, and insufficiency of the testimony to justify punitive damages?

(5) Was there error in refusing appellants' motion for new trial based upon the excessiveness of the verdict for punitive damage?

(6) Was there error in the admission of testimony as to personal injury when respondent only claimed damage?

(7) Was there error in charging under the circumstances of this case that the appellants owed the duty of giving signals by whistle or bell upon approaching the crossing?

(8) Was there error in charging that gross negligence would defeat the defense of contributory negligence?

(9) Was there error in charging that gross negligence and willfulness and wantonness are placed by the law in the same classification?

(10) Was there error in the charge as to the circumstances under which punitive damage should be awarded?

In order to make a proper disposition of this case it is only necessary to consider the following questions raised: (1) Was there error in refusing appellants' motions for nonsuit, directed verdict, and new trial, based upon failure of proof of actionable negligence, willfulness, wantonness or recklessness on the part of the appellants? (2) Was there error in refusing appellants' motions for nonsuit, directed verdict, and new trial based upon contributory negligence, and contributory willfulness, wantonness or recklessness of respondent's intestate?

To determine whether or not the trial Judge committed error in refusing the motions made for nonsuit, directed verdict, and new trial, it becomes necessary to review the testimony, construing it in the light most favorable to the respondent. The uncontradicted testimony shows that the appellants had stopped its train of cars upon its tracks in such a manner that a much traveled highway was blocked, and permitted so to remain for some length of time; that there were no lights placed upon the train of cars; that there were no flagmen, or other employee, placed at the crossing to warn those traveling upon the highway; that it was about 8 o'clock at night; that the weather was clear, but the night was dark; that there were no means whatsoever used to warn the public using the highway that the crossing was blocked by appellants' train of cars. This testimony, standing alone, without considering the conduct of respondent's intestate while approaching the railroad crossing, would have required the trial Judge to submit the case to the jury on the questions of both actual and punitive damages.

We next turn to the evidence to see what was the conduct of the respondent's intestate as he approached the railroad crossing in question in his automobile.

The evidence shows that the respondent's intestate was familiar with the crossing in question, having traversed it often going to and from his home, situated about three or four miles from the scene of the collision. On the occasion in question he was accompanied by one Gibson, who survived the wreck. The witnesses for respondent estimated that the intestate approached the crossing driving his car at a rate of speed variously estimated to have been between thirty and fifty-five miles per hour. Jack Gasque, one of the respondent's witnesses, testified that upon seeing appellants' train of cars blocking the crossing, he stopped his car on the right-hand side of the highway approaching the crossing, some fifty to sixty feet from the crossing, and then remained there for some time awaiting the train to clear the crossing; that while he was so situated respondent's intestate approached him from the rear, driving his car at a rate of speed estimated to have been between fifty and fifty-five miles per hour; that respondent's intestate suddenly cut his car to the left of that of the witness, passed the witness, and then cut his car sharply to the right; that the deceased's car struck the train of cars of appellants, which then had the crossing completely blocked, and that respondent's intestate collided at an angle with one of appellants' cars.

Gibson, a witness for respondent, and who was riding with respondent's intestate at the time of the collision, testified that he did not see the car of Gasque parked on the highway, nor did he see the train of cars across the highway; that respondent's intestate was driving at a speed estimated to be between thirty to fifty-five miles per hour at the time of the collision with the train of appellants. Every witness of respondent, some six in number, who was at the scene of the collision when it occurred, with the exception of Gibson, testified that they had no difficulty in seeing the appellants' train of cars blocking the highway in ample time to stop;

their automobiles at distances varying from five hundred feet to about twenty feet from the crossing. In addition to these witnesses the appellants called to testify what appears to be the only other remaining witness who was at the scene of the collision when it occurred. This witness' testimony was to the effect that she was occupying the automobile with Gasque; that she saw the train of cars blocking the crossing; that her companion was able to stop his car without any difficulty the distance of about the length of two automobiles from the crossing.

Construing the testimony in the most favorable light to the respondent, there can be but one reasonable inference to be drawn from the testimony, and that is that if respondent's intestate had exercised the slightest degree of care he could have and would have, seen appellants' train of cars blocking the crossing in ample time to have avoided the collision.

Conceding that the facts show the night to have been dark; that the train of cars of appellants was unlighted; that the highway was completely blocked by appellants' train of cars; that no means were used to warn those approaching the crossing that it had been blocked by appellants' train of cars, still these facts would not entitle respondent to recover if her intestate was guilty of gross contributory negligence and recklessness. *Wannamaker v. Southern Railway Co.,* 191 S. C., 86, 3 S. E. (2d), 811; *Smith v. Southern Railway—Carolina Division,* 193 S. C., 44, 7 S. E. (2d), 630; *Breeden v. Rockingham Railroad Co.,* 193 S. C., 220, 8 S. E. (2d), 366; *Carter v. Atlantic Coast Line Ry. Co.,* 194 S. C., 494, 10 S. E. (2d), 17.

From the respondent's testimony alone the conclusion is inescapable that her intestate was, as a matter of law, guilty of gross contributory negligence, and contributory willfulness, wantonness or recklessness, and that such gross negligence, willfulness, wantonness or recklessness contributed as the proximate cause to the collision and resulting damage to the automobile of respondent's in-

testate. This conclusion is strengthened by the testimony of appellants' witnesses. Having reached the conclusion we have in regard to the intestate's conduct, under the numerous decisions of this Court, including those authorities hereinbefore cited, the respondent is precluded from recovering damages against the appellants, and it was error for the trial Judge to refuse appellants' motions for nonsuit and directed verdict, on the grounds herein discussed. The exceptions based on the trial Judge's refusal to grant appellants a nonsuit and directed verdict are sustained.

While we have given full consideration to all of the exceptions taken by the appellants, having reached the conclusion above announced, it becomes unnecessary to pass upon the remaining exceptions.

The case is remanded for the purpose of entry of judgment in favor of the appellants.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.