Clark W. CURRY
v.
The UNITED STATES of America.
Civ. A. 1370.

United States District Court,
W. D. South Carolina,
Greenville Division.
Jan. 20, 1954.

**40**

Price & Poag, Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Chester D. Ward, Jr., Asst. U. S. Atty., Greenville, S. C., for defendant.

WILLIAMS, District Judge.

In this action plaintiff seeks to recover Fifty Thousand ($50,000) Dollars from the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 2674, for damages to his automobile and injuries to himself resulting from a collision with a diesel-electric locomotive of the defendant at a place where the highway crosses defendant's railroad.

After hearing the testimony, with the consent and in the presence of counsel for both parties, I viewed the scene of the accident and the approaches to it at the same time of night the accident was alleged to have occurred.

In compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon as follows:

Findings of Fact

On the evening of October 29, 1951, at about 8:30 plaintiff was driving along U. S. Highway No. 25 in his 1950 Studebaker automobile approximately seven miles south of Greenville, S. C. in the direction of Greenwood, S. C. This highway, commonly referred to as Augusta Road, is a heavily traveled public highway of the State of South Carolina. Plaintiff had just applied his brakes at an intersection and as he came through the intersection he proceeded up a small hill and around a slight curve. By the time his car had straightened out of the curve, it was going at a speed of 40 to 50 miles per hour.

At a point in this highway some 1,000 feet from where the road straightens out, a spur railroad track owned and operated by the defendant crosses it at approximately right angles. Defendant's track runs from its railhead at the Donaldson Air Force Base to Gantt Station, a junction point with a line of the Southern Railway Company.

Plaintiff, a resident of Greenwood, S. C. and a traveling salesman, was returning home from a business trip in the Greenville area. He was familiar with this road and the fact that defendant's spur track crosses it at this point, since he had made the trip between Greenwood and Greenville on many occasions during both the day and night. He also knew that on occasions the defendant used this spur track, for while traveling this highway at night he had been forced to halt his car twice to permit the train to pass through the intersection. At these times, fusees were placed on the highway to warn of the passage of the train across the highway and these fusees had provided sufficient light to notify the plaintiff, even before he had rounded the curve, that a train was crossing. On the evening in question, plaintiff did not see any fusees or lights to warn him of a train crossing the highway.

On the right side of the highway about 50 feet from the road approximately 160

feet north of the crossing there is a filling station and lunch counter. It is very brightly lighted at night by strings of electric lights. As the plaintiff came out of the curve the lights from his automobile blended with the bright lights from the station, making it almost impossible for him to see anything crossing the highway beyond the station.

On the night of October 29, 1951, a train of twelve empty black gondola cars and one diesel locomotive left Donaldson Air Force Base for the Gantt Station early in the evening. The engine was pushing the line of cars. The train crew was composed of three men (an engineer and two brakemen), all enlisted men of the United States Air Force. This train proceeded west until it was within about 80 feet of the Augusta Road crossing. There it stopped, the train crew dismounted, left the train, crossed the Augusta Road and went into the service station mentioned above where they ate supper and stayed for about thirty minutes. They then left the eating place and returned to the train. The engineer walked about 500 feet down the track to the locomotive and the two brakemen boarded the lead car of the train, after having signalled the engineer with their flashlights to come ahead. The engineer gave the customary signal that he was starting the train, two short blasts on his diesel horn, and blew the horn intermittently until three or four cars of the train were over the crossing. The posted speed at the place of the accident is 55 miles per hour.

Although there is some testimony to the contrary, I find that the defendant did not place a fusee on the highway prior to the departure of the train across the intersection. The whistle or diesel horn was not blowing at the time of this collision and it had not been blowing since the third or fourth car crossed the highway. The bell was not ringing.

The train crew was grossly negligent, reckless and wilful in failing to protect this crossing on the night of October 29, 1951, by putting out a fusee as the standing operating instructions required, or by any other means, and such gross negligence, recklessness and wilfulness was the proximate cause of the injuries to plaintiff and his consequent damage. The plaintiff was not operating his car at an excessive rate of speed or at a speed which was greater than was reasonable at the time and place and under the circumstances. The plaintiff was not guilty of gross contributory negligence, recklessness or wilfulness; nor, for that matter, was he guilty of simple contributory negligence.

■ The plaintiff's wages were One Hundred ($100) Dollars a week prior to the collision and his loss in wages due to this collision is Thirty-eight ($3,800) Dollars. His medical expenses, including doctors'. and hospital bills, were One Thousand and Six & 50/100 ($1,006.50) Dollars. His 1950 automobile was damaged to the extent of Twelve Hundred and Five ($1,205) Dollars. As a result of the injuries to his person and damages to his property, the plaintiff should be awarded the sum of Twelve Thousand, Seven Hundred and Fifty ($12,750) Dollars.

■ The plaintiff received payments under the South Carolina Workmen's Compensation Act (Code 1952, § 72–1 et seq.) of Four Thousand, Four Hundred and Twenty & 94/100 ($4,420.94) Dollars which was paid by General Accident Fire and Life Assurance Corporation, Lt., and this company is subrogated in that amount to any recovery in this suit.

### Conclusions of Law

■■ Section 2674 of Title 28 U.S. C.A., the Federal Tort Claims Act, removes the sovereign immunity of the United States in tort actions and applies to the United States the same measure of liability as is applied under the law of the state where the tort occurred to a private individual or corporation. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. Since the United States of America admittedly owned the track upon which this train was operating and the locomotive pro-

pelling the train, under the established law of South Carolina, it is responsible for any damages arising out of the negligent operation of the train. Seay v. Southern Ry. Co., 208 S.C. 171, 37 S.E. 2d 535.

The action of the train crew in driving a train of twelve black gondola cars along this spur track across the heavily traveled U. S. Highway No. 25 (Augusta Road) in the night so as to block the highway without protecting the crossing by fusees or flagmen in direct violation of known operating instructions, constitutes not only negligence but gross negligence, recklessness and wilfulness. Kneece v. Southern Ry. Co., 187 S.C. 195, 197 S.E. 673; Brown v. Powell, 198 S.C. 403, 18 S.E.2d 212; Myers v. Atlantic Coast Line R. Co., 172 S.C. 236, 173 S.E. 812; Bober v. Southern Ry. Co., 151 S.C. 459, 149 S.E. 257; Pinckney v. Atlantic Coast Line Railroad Co., 147 S.C. 227, 145 S.E. 135; Miller v. Atlantic Coast Line Railroad Co., 140 S.C. 123, 138 S.E. 675, 687.

In the Miller case, supra, the court said:

" * * * The situation was such that both companies owed the duty to the public of whatever would be reasonably adequate to protect this crossing, with the increased danger which they had caused.

"There was no light provided by the town or either railroad. There was no flagman there. * * * the public has a right to be protected where a highway crosses a railroad track."

The defendant expressly recognized by its operating instructions that the only way this crossing could be adequately protected was by a flagman in the daytime and fusees at night.

This case closely resembles the case of Bober v. Southern Ry. Co., supra, [151 S.C. 459, 149 S.E. 260] where the court said:

" * * * There are a number of facts surrounding this case which the jury might well have taken in-

to consideration in determining the question of negligence. The road in question is one of the most heavily traveled roads in South Carolina. The track in question was not one which was constantly used; it is not a main line or a regular side track. It was used only at intervals to transfer trains and cars from a set of tracks on one side of Meeting street to a set of tracks on the other side of Meeting street. When the crossing is to be occupied by a train is not known by the public in general but is known to the railroad company. Under the admitted facts in this case, the crossing in question would have been blocked for a period of several minutes with this train of black coal cars. There was no light over the crossing. There was no warning signal by light, bell, or otherwise placed at the crossing to indicate the presence of a train, and there was no flagman placed out on either side of the train to indicate its presence."

In addition to the facts which appeared in the Bober case, here we have conflicting light rays from the service station on the west adding to the necessity of special protection. Bingham v. Powell, 195 S.C. 238, 11 S.E.2d 275.

There can be no question but that the defendant was grossly negligent, reckless and wilful in this case.

The Government contends, however, that the plaintiff was guilty of gross contributory negligence, recklessness and wilfulness. Under the law of South Carolina such a defense is an affirmative defense and the burden is upon defendant to establish it. Oliver v. Columbia, Newberry and Laurens R. Co., 65 S.C. 1, 43 S.E. 307.

Defendant offered no testimony to establish this defense but relied upon the testimony of the plaintiff. From this testimony it appears that plaintiff knew of the crossing and that he approached it at a speed of from 40 to 50 miles per hour. As soon as he saw

the train, he turned sharply to the left and applied his brakes but could not stop in time to avoid the collision. I do not think this establishes contributory negligence, much less gross contributory negligence, recklessness or wilfulness.

In the case of Bingham v. Powell, 195 S.C. 238, 11 S.E.2d 275, the South Carolina Court held that a plaintiff approaching a railroad crossing with which he was familiar would not charge him with knowledge that the crossing would be completely blocked by an unlighted and an unguarded train despite the darkness, and could not hold him guilty of contributory negligence as a matter of law. The court said, 195 S.C. at page 245, 11 S.E.2d at page 278:

"In this case the testimony shows that plaintiff knew the crossing, the approximate location of the track, and that he was approaching it, but none of such would charge him, in our view, with foresight of the complete blocking of the crossing by unlighted and unguarded freight cars despite the darkness and rain, and we think and hold that the circumstances herein pointed out require the conclusion that the issues involved in this appeal were properly submitted to the jury."

The speed at which the plaintiff approached the crossing was well within the speed of the general user of this crossing, according to the posted speed limit.

Then, too, on the question of contributory negligence it must be remembered that the operating rules of defendant required that this crossing be protected with fusees at night. This is an admission that there was a necessity for such a protection at this crossing. Hines v. Chicago, M. & St. P. R. Co., 196 Iowa 109, 194 N.W. 188; Bluhm v. Byram, 193 Wis. 346, 214 N.W. 364. Plaintiff testified that he had crossed this crossing on two previous occasions when it had been blocked at night, and on both occasions it had been protected by fusees. These fusees could be seen a long distance from the crossing.

In the case of Ray v. Hines, 118 Wash. 530, 203 P. 929, 930, in reference to one misled by the failure of a train attendant to give a customary warning, the court said:

"Whether the flagman be stationed at the crossing, or the custom be established of giving a warning by the men in charge of the movement of trains across the street, the result is the same. In either case the public is led to expect the warning if there be imminent danger, and the failure to give the customary warning tends to mislead and deceive. In fact, such failure becomes in effect a trap."

This rule is expressly recognized in South Carolina in the cases of Vernon v. Atlantic Coast Line R. Co., 221 S.C. 376, 70 S.E.2d 862; Jennings v. McCowan, 215 S.C. 404, 55 S.E.2d 522, certiorari denied Atlantic Coast Line R. Co. v. Jennings, 338 U.S. 956, 70 S.Ct. 494, 94 L.Ed. 590; and Cammer v. Atlantic Coast Line R. Co., 214 S.C. 71, 51 S.E.2d 174, 177.

In the Cammer case, the following language was used and was quoted with approval in the McCowan case and the Vernon case:

"Automatic warning lights and similar devices at crossings may not be soundly said to relieve one of all care save obedience to their signal. The test is, as usual, the conduct of the average, reasonably prudent person, under the existing conditions. But put there to warn of danger, when the warning ceases a resulting assumption of safety reasonably arises. This will hardly escape the jury, and should not. The circumstance is properly an element of the applicable standard of due care. This was the rule applied in the instruction to the jury, unexcepted to, in our case of Ballard v. Southern Ry. Co., 197 S.C. 288, 15 S.E.2d 342, where the law of North

Carolina was controlling. It is approved by the authorities generally. The following quotation is from 44 Am.Jur. 817, Railroads, Sec. 563, and in the footnotes are found citations of several annotations to which reference may be had:

" 'In perhaps a longer line of decisions it is held that while the failure of a signaling device at a railroad crossing to operate and warn of the approach of a train does not entirely relieve a traveler from his duty to look and listen for an approaching train, nevertheless the traveler may rely to some extent on the apparent safety implied from the silence of the signal, and such silence of the signal is a circumstance to be taken into consideration by the jury on the issue of contributory negligence. The failure to give the signals raises the presumption of safety, but such failure is no more than a circumstance which may properly be taken into consideration in determining the ultimate question of whether he did exercise the degree of care required or not. And, in determining whether he did exercise such care, his conduct at the time is to be judged in the light of such presumption.' "

The plaintiff relied upon the custom of defendant in protecting this crossing, when blocked at night, with fusees and had a right to so rely. I find that plaintiff's conduct was that of the average reasonably prudent person under the existing circumstances and that he was not guilty of contributory negligence. ▌ Even if it be conceded that plaintiff was guilty of contributory negligence, which I do not find, he is still entitled to recover. It is well established in South Carolina that contributory negligence is no defense if the railroad's conduct was reckless, wilful or wanton. Cook v. Atlantic Coast Line R. Co., 196 S.C. 230, 13 S.E.2d 1, 133 A.L.R. 1144, and a host of other South Carolina cases collected at 151 A.L.R. 187. Under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., the state law applies to the United States as it does to any other tort feasor. Nolan v. United States, 4 Cir., 186 F.2d 578; D'Anna v. United States, 4 Cir., 181 F.2d 335. In the case of Carroll v. United States, D.C., 87 F.Supp. 721, Judge Wyche held that all general laws of South Carolina, whether common or statutory, relating to highway crossings by railroad corporations are applicable to the United States in an action under the Tort Claims Act.

▌ Thus, in an action under the Federal Tort Claims Act, simple negligence would be no defense where the defendant was guilty of reckless, wilful or wanton acts.

▌ Wilfulness is the conscious absence of due care. Monroe v. Atlantic Coast Line R. Co., 137 S.C. 357, 135 S.E. 472. The failure to place a fusee to protect this crossing over a heavily traveled main highway in violation of standing instructions is a conscious absence of due care and constitutes wilfulness, wantonness and recklessness. Nothing the plaintiff did can be so classified.

▌ The failure to give the statutory crossing signals is evidence of negligence, wilfulness and recklessness under the South Carolina decisions. The South Carolina statute, Code 1952, § 58–743, requires the bell to be rung or the whistle to be blown until the engine has crossed the highway. The whistle admittedly was not blown until the engine crossed the highway. The engineer testified he continually rang the bell, but plaintiff, who has good hearing, did not hear it. Neither of the brakemen testified that the bell was rung at all. I do not believe it was, and defendant thus violated the crossing signal statute and for this is also guilty of wilfulness, wantonness and recklessness.

I therefore conclude that plaintiff is entitled to recover of defendant the sum of Twelve Thousand, Seven Hundred and Fifty ($12,750) Dollars.

And it is so ordered.