John L. BOWMAN, individually and as executor of the estate of John W. Bowman, Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.

Civ. A. No. 0:91–3270–12.

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 9, 1993.

A. Philip Baity, Ridley, Ridley & Burnette, Fort Mill, SC, Sharon McCain Rickborn, Columbia, SC, for plaintiff.

John Gregg McMaster, Henry Dargan McMaster, Frank Barnwell McMaster, Tompkins & McMaster, Columbia, SC, for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is currently before the court on the defendant's motion for summary judgment on all of the plaintiff's causes of action, the defendant's alternative motion to dismiss for failure to state a claim plaintiff's action based on inadequate grade crossing warning devices, and the plaintiff's motion for summary judgment on his claim for failure to sound statutorily required warnings. In addition, the plaintiff has moved to have this court reconsider its order of February 26, 1992, in which the court concluded that the speed ordinance of the City of Rock Hill was preempted by federal law. Oral argument on these motions was heard on August 18, 1993. For the reasons discussed below, the defendant's motion for summary judgment is granted in part and denied in part; the defendant's motion to dismiss is denied; the plaintiff's motion for summary judgment is denied; and the plaintiff's motion to reconsider is denied.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Viewed in the light most favorable to the plaintiff, the facts are as follows: On May 22, 1990 at approximately 7:00 a.m., defendant Norfolk Southern's freight train was proceeding north near Rock Hill, South Carolina. At the same time, John W. Bowman, the plaintiff's decedent, was driving his pickup truck east on Robertson Road on his way to work. Bowman worked at the MTM Chemical plant, located adjacent to the defendant's railroad tracks near the Robertson Road crossing. He had worked at MTM for about four months. As Bowman attempted to cross the tracks at the Robertson Road crossing, the defendant's train struck his pickup truck and caused the truck to flip over. Bowman survived the accident, but sustained severe head injuries, which rendered him comatose. Bowman remained in a coma until December 10, 1992, when he died of complications associated with his vegetative condition.

John L. Bowman, the decedent's father, brought this diversity action both individually and as the executor of his son's estate for wrongful death and negligence. The plaintiff alleges that the defendant was negligent for the following: (1) operating the train at an excessive speed; (2) failing to provide adequate warning devices at the grade crossing; (3) failing to remove from the railroad's right of way vegetation that obstructed the decedent's view of the approaching train; and (4) failing to sound the warnings required by S.C.Code Ann. § 58–15–910 (Law.Co-op. 1976). In addition, the plaintiff alleges negligent entrustment by the defendant in allowing the engineer who was driving at the time of the accident to operate the train.

The defendant's main argument for summary judgment on most of the plaintiff's claims is that these state-law claims are pre-empted by federal law. This issue is largely controlled by the United States Supreme Court's recent decision, *CSX Transportation, Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), which presented a fact situation very similar to the case presently at bar. In *Easterwood,* the Court addressed the pre-emptive effect of the Federal Railroad Safety Act of 1970 (FRSA), 45 U.S.C. §§ 421–447 (1988 & Supp. II 1990).

The FRSA contains an express pre-emption clause, section 434, which provides, in part:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.

45 U.S.C. § 434 (1988). Thus, the focus of the pre-emption inquiry is whether the Secretary of Transportation has issued regulations pursuant to the FRSA "covering the same subject matter" as the state law pertaining to railroad negligence.

## I. Excessive Speed

■ The defendant first argues that the plaintiff's negligence action based on alleged excessive speed is pre-empted. The court agrees.

The Secretary of Transportation has issued regulations, codified at 49 C.F.R. § 213.9(a) (1992), that set the maximum speed limits for all freight and passenger trains for the different classes of track on which they travel. The *Easterwood* Court held that these speed regulations pre-empt state common-law claims based on excessive speed. *Easterwood,* —— U.S. at —— – ——, 113 S.Ct. at 1742–44. As the Court observed:

On their face, the provisions of § 213.-9(a) address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of

the sort which [Easterwood] seeks to impose on [the defendant railroad].

*Id.* at ——, 113 S.Ct. at 1742.

In the instant case, the uncontradicted evidence demonstrates that the tracks where the accident occurred were Class IV tracks. Under the speed regulations of 49 C.F.R. § 213.9(a), the maximum speed limit on this class of track is 60 m.p.h. There is no evidence in the record in this case that the train was exceeding 60 m.p.h. The speed tapes from the train indicate that the train was traveling between 46 and 48 m.p.h. at the time of the accident. At oral argument on this motion, plaintiff's counsel conceded that these records were reasonably accurate.

Two federal district court decisions after *Easterwood* have applied the Supreme Court's analysis and have concluded that state-law claims based on excessive speed are preempted. *See Eldridge v. Missouri Pacific R.R.,* 832 F.Supp. 328, 330 (E.D.Okla. 1993); *Watson v. Rail Link, Inc.,* 826 F.Supp. 487, 490 (S.D.Ga.1993).

Moreover, before *Easterwood,* this court reached essentially the same conclusion in its order of February 26, 1992, in which this court held that the FRSA pre-empted the City of Rock Hill's speed ordinance restricting trains to twenty-five miles per hour. The court recognized that the Secretary's train speed regulations, C.F.R. §§ 213.9 and 213.-57, covered the exact subject matter of the municipal ordinance. Therefore, the court concluded that the plaintiff's claims based on excessive speed were pre-empted.

Plaintiff has moved this court to reconsider its order of February 26, 1992 in light of newly discovered evidence that the defendant railroad allegedly has an internal policy of following municipal speed ordinances. Additionally, the plaintiff asserts that the railroad has a self-imposed speed limit of 50 m.p.h. on the track at which the accident occurred. Although a defendant's internal policies may be evidence of due care in a typical negligence action, *see e.g., Lee v. Missouri Pacific R. Co.,* 566 So.2d 1052 (La.Ct.App.1990), that issue merely goes to the state common-law of negligence. Because this court determines that state law regarding train speed is pre-empted, evidence of the defendant's internal policies about train speed is irrelevant.

Plaintiff also argues that state law regarding train speed is not pre-empted because the crossing at issue in this case presented an essentially local hazard. The pre-emption clause of the FRSA contains a savings clause, which provides:

> A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (1988). The *Easterwood* Court specifically did not address the FRSA's pre-emptive effect of suits "for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." *Easterwood,* —— U.S. at —— n. 15, 113 S.Ct. at 1743 n. 15. However, this case does not seem to present the type of "specific, individual hazard" to which the Court in *Easterwood* referred. Accordingly, the court does not agree that the savings clause of 45 U.S.C. § 434 applies to this case.

In his amended complaint, plaintiff alleges that the defendant was negligent "[i]n operating its train across the Robertson Road crossing at an excessive rate of speed which was dangerous under all the circumstances." Amended Complaint at ¶ 25(d). Plaintiff asserts that the Robertson Road crossing was "ultrahazardous" because of the following: (1) the crossing is used by trucks transporting hazardous materials to and from the two chemical plants adjacent to the tracks; (2) the location of the crossing in an industrial area created heavy automobile traffic when plant workers change shifts; and (3) the defendant railroad had notice of a previous accident that occurred at the same crossing on July 1, 1988. Plaintiff's theory apparently rests on a common-law negligence principle that reasonable persons must take greater care to avoid ultrahazardous situations.

However, in *Easterwood* the Supreme Court rejected a similar argument. The Court noted:

> The state law on which [Easterwood] relies is concerned with local hazards only in the sense that its application turns on the facts of each case. The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions. [Easterwood's] contrary view would completely deprive the Secretary of the power to pre-empt state common law, a power clearly conferred by § 434.

*Easterwood*, —— U.S. at ——, 113 S.Ct. at 1743. Indeed, were the court to accept the plaintiff's argument, such an exception would swallow the FRSA's clear intent to pre-empt state law.

The legislative history of the FRSA supports the conclusion that the savings clause does not apply in the instant case. As the Eleventh Circuit Court of Appeals observed: "[T]he legislative history [of the FRSA] makes it abundantly clear that this savings clause is to be narrowly construed." *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1553 n. 3 (11th Cir.1991) (citing H.Rep. No. 1194, 91st Cong., 2d Sess. 11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4104, 4117), *aff'd*, —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). First, an "essentially local safety hazard" cannot be statewide in character. *See id.; see also Norfolk & Western Ry. Co. v. Public Utilities Commission*, 926 F.2d 567, 571 (6th Cir.1991) ("Manifestly, this 'local safety hazard' exception cannot be applied to uphold the application of a state-wide rule."). Plaintiff's common-law theory of negligence for failure to slow a train under certain circumstances is a statewide rule.

Secondly, to avoid pre-emption, the state regulation of a local safety hazard must " 'not [be] capable of being adequately encompassed within uniform national standards.' " *Easterwood*, 933 F.2d at 1553 n. 3 (quoting H.Rep. No. 1194, *supra*, at 4117). The circumstances listed by the plaintiff that allegedly make the Robertson Road crossing a specific local hazard are actually addressed in the federal regulatory scheme. *See* 23 C.F.R. § 646.214(b)(3)(i)(E) (requiring auto-matic gates and flashing lights to be installed at certain projects when the following exists: "[e]ither a *high volume of vehicular traffic, ... substantial numbers of ... trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences*, or any combination of these conditions") (emphasis added). Accordingly, the hazards presented by the crossing at issue in this case are not only capable of being adequately encompassed within the uniform national standards, but actually are so encompassed.

Even if the court accepted plaintiff's assertion that the Robertson Road crossing presented an "essentially local safety hazard" to avoid pre-emption under the savings clause of 45 U.S.C. § 434, the plaintiff would still have to show that the state regulation does not create an undue burden on interstate commerce. Although the plaintiff did not address this issue, the common-law theory on which his excessive speed claim rests is an example of the "hodgepodge of state safety regulations" that Congress sought to avoid when it enacted the FRSA to provide uniform railroad regulation. *See Easterwood*, 933 F.2d at 1552.

Therefore, the court rejects plaintiff's argument that federal law does not pre-empt state law generally regarding a railroad's duty to slow a train for an extra-hazardous crossing. *See Walker v. St. Louis–Southwestern Ry. Co.*, 835 S.W.2d 469, 474 (Mo.Ct. App.1992) (holding that "the old common law duty to moderate train speed ... at an extra- or ultra-hazardous crossing" is pre-empted).

## II. Adequacy of Grade Crossing Warning Devices

### A. Pre-emption

■ The defendant asserts that the plaintiff's cause of action for negligence based on allegedly inadequate warning devices at the Robertson Road crossing is pre-empted by federal law. The defendant argues that, under the standards set forth in *Easterwood*, pre-emption has occurred because the crossing at issue was inspected pursuant to a federally funded program established by the South Carolina Highway Department. This

court disagrees with the defendant's reading of *Easterwood.*

In *Easterwood,* the Supreme Court specifically addressed pre-emption of claims based on inadequate warning devices at grade crossings. In analyzing pre-emption in this area, the Court examined a series of regulations promulgated by the Secretary of Transportation that address grade crossing safety.

First, the Court examined the regulations of 23 C.F.R. pt. 924 (1992), which require each state receiving federal aid to establish a highway safety improvement program to evaluate and remedy highway hazards. The Court also noted that parallel regulations, codified at 23 C.F.R. pt. 1204.4, "require state programs to systematically identify hazardous crossings and develop 'a program for the elimination of hazards.'" *Easterwood,* —— U.S. at —— & n. 6, 113 S.Ct. at 1738 & n. 6. The Court determined that these regulations merely "establish the general terms of the bargain between the federal and state governments: the States may obtain federal funds if they take certain steps to ensure that the funds are efficiently spent." *Id.* at ——, 113 S.Ct. at 1739.

Furthermore, the Court noted that these regulations were not intended to displace state negligence law. "In fact, the scheme of negligence liability could just as easily complement these regulations by encouraging railroads—the entities arguably most familiar with crossing conditions—to provide current and complete information to the state agency responsible for determining priorities for improvement projects in accordance with § 924.9." *Id.* at ——, 113 S.Ct. at 1739. Accordingly, the Court refused to find pre-emption based on the "general mandates" of these regulations. *Id.* at —— – ——, 113 S.Ct. at 1739–40.

In addition, the *Easterwood* Court refused to find pre-emption based on regulations that require states to comply with the standards set out in the Federal Highway Administration's Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD). As the Court noted, the Manual was intended to set standards for traffic control devices, but not to establish legal requirements for installation of these devices. Therefore, the Court concluded that "the requirement that the States comply with the MUTCD does not cover the subject matter of the tort law of grade crossings." *Id.* at ——, 113 S.Ct. at 1740.

Finally, the *Easterwood* Court examined the pre-emptive effect of the provisions of 23 C.F.R. § 646.214(b)(3)–(4). These regulations provide that particular warning devices must be installed, or federal approval must be obtained, for certain crossing projects. Because these regulations "displace state and private decision making authority" about the devices required at certain crossings, the Court concluded that "when [these regulations] are applicable, state tort law is pre-empted." *Easterwood,* —— U.S. at —— – ——, 113 S.Ct. at 1740–41. Section 646.-214(b)(3) applies to projects in which federal funds participate in the installation of warning devices.[1] Accordingly, the pre-emption issue in *Easterwood* turned on whether federal funds participated in the installation of warning devices at the crossing where the collision occurred.

Defendant in the instant case contends that state tort law is pre-empted because the Robertson Road crossing was inspected pursuant to the Highway Department's Railroad Grade Crossing program, which is federally funded. This reading of *Easterwood* cannot prevail.

The crossing at issue in *Easterwood* was not only inspected, but the Georgia Department of Transportation had actually planned to upgrade the site and had initially set money aside for the plan. *Id.* at —— – ——, 113 S.Ct. at 1741–42. Nevertheless, the Court found no pre-emption had occurred because no federal funds actually participated in the installation of warning devices at that crossing. *Id.* The situation in *Easterwood* thus presented a stronger argument for pre-emption than that urged by the defendant here; yet, the Supreme Court rejected

---

**1.** The requirements of 23 C.F.R. § 646.214(b)(3) also apply to railroad-highway grade crossings located within the limits of, or near the terminus of, a federal-aid highway project. The defendant in the instant case has not alleged that the Robertson Road crossing falls within this category.

the railroad's claims of pre-emption. *See id.; see also Southern Pacific Transportation Co. v. Builders Transport, Inc.* 1993 WL 185620 (E.D.La. May 25, 1993) (unpublished) (following *Easterwood* and finding no pre-emption of state-law negligence action based on inadequate warning devices even though crossing had been rated, evaluated, and prioritized to receive an upgrade using federal funds).

Therefore, this court concludes that the plaintiff's negligence claim for failure to provide adequate warning devices at the crossing is not pre-empted by federal law.

### B. Failure to State a Claim

■ In the alternative to pre-emption, the defendant asserts that the plaintiff's action based on inadequate warning devices fails to state a claim under South Carolina law. It is undisputed that the Robertson Road crossing contained the standard crossbuck warning signs, the only warnings required by South Carolina statute. *See* S.C.Code Ann. § 56–5–1010 (Law.Co-op.1991); S.C.Code Ann. § 58–17–1390 (Law.Co-op.1976). Defendant alleges that railroads have no duty to install additional warning devices because the Highway Department has the exclusive authority to install such devices. The South Carolina MUTCD and S.C.Code Ann. §§ 56–5–930 and –1020 apparently vest such authority for selecting and installing crossing warning devices solely in the Highway Department.

However, the court does not agree that these provisions were intended to relieve railroads of their common-law duty to provide safe passage across their rails. *See, e.g., Graham v. Seaboard Air Line R.R.,* 250 F.Supp. 566, 571 (D.S.C.1966) ("Where a railroad crosses a public highway a motorist using the highway has a right to use the crossing just as much as the railroad has a right to use it; and it is the common law duty of the railroad to give such signals and to take such actions as are reasonably sufficient to protect travellers using the crossing."); *cf. Doremus v. Atlantic Coast Line Ry. Co.,* 242 S.C. 123, 130 S.E.2d 370, 375 (1963) (holding that railroad company has common-law duty, independent of statute, "to give such signals as may be reasonably sufficient in view of the situation and surroundings to put individuals using the highway on their guard"). Because railroads are the entities most familiar with the dangers presented by a particular crossing, they should be encouraged to bring dangers to the attention of the appropriate authorities. Although railroads may lack the authority to physically install warning devices, they have a duty to identify crossings that pose particular threats and to report such dangers to the Highway Department. *See Easterwood,* —— U.S. at —— n. 5, 113 S.Ct. at 1738 n. 5 (noting that the allocation of the authority to install safety devices to state and local governments "apparently does not relieve the railroads of their duty to take all reasonable precautions to maintain grade crossing safety, including, for example, identifying and bringing to the attention of the relevant authorities dangers posed by particular crossings") (citing *Southern Ry. Co. v. Georgia Kraft Co.,* 188 Ga.App. 623, 373 S.E.2d 774, 776 (1988)). Accordingly, this court denies defendant's motion to dismiss plaintiff's claim relating to the adequacy of the warning devices at the crossing.

### III. Failure to Remove Vegetation

■ The issue of pre-emption of the plaintiff's claim based on the railroad's alleged failure to remove vegetation from its right of way was not briefed by either side. However, at oral argument the defendant briefly addressed the pre-emption of plaintiff's vegetation claim; thus, the court is inclined to dispose of this issue. The court concludes that the plaintiff's claim is partially pre-empted.

Under 49 C.F.R. § 213.37 (1992), railroad track owners must keep vegetation on, or immediately adjacent to, the tracks under control. As the Eleventh Circuit Court of Appeals stated, "[b]ecause the Secretary has chosen to regulate vegetation, Congress explicitly has pre-empted all state regulation in this area." *Easterwood v. CSX Transportation, Inc.,* 933 F.2d 1548, 1554 (11th Cir. 1991), *aff'd,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). However, as the Fifth Circuit Court of Appeals found, because these regulations apply only to vegetation on, and immediately adjacent to, the railbed, states are free to regulate vegetation located beyond the area contemplated by 49

C.F.R. § 213.37. *Missouri Pacific R. Co. v. Railroad Commission of Texas,* 833 F.2d 570 (5th Cir.1987). Accordingly, plaintiff's claim relating to vegetation immediately on or adjacent to the track is pre-empted; but to the extent that the plaintiff's claim relates to vegetation on the defendant's right of way near the tracks, beyond the area covered by the federal regulation, this claim is not pre-empted.

Viewing the evidence in the light most favorable to the plaintiff, there is sufficient evidence of excessive vegetation to deny summary judgment for the defendant on the part of the plaintiff's claim that is not pre-empted.

### IV. Failure to Sound Warning Signals

■ Both the plaintiff and the defendant have moved for summary judgment on the plaintiff's claim for failure to sound the warning signals required by S.C.Code Ann. § 58-15-910. This section provides that a train must ring a bell or sound a whistle "at a distance of at least five hundred yards from the place where the railroad crosses any public highway ... and [must keep the signal] ringing or whistling until the engine ... has crossed such highway." The signal must be sounded continuously until the engine passes the crossing, *Curry v. United States,* 129 F.Supp. 38 (D.S.C.1954), and violation of this section is negligence per se, *Seaboard Coast Line R.R. v. Owen Steel Co.,* 348 F.Supp. 1363 (D.S.C.1972). However, under the statute both ringing of the bell and blowing of the whistle are not required, either being sufficient signal of the approach of the train. *McAbee v. Southern Ry. Co.,* 166 S.C. 166, 164 S.E. 444 (1932).

Because both parties have moved for summary judgment on this issue, the facts must be viewed in the light most favorable to the non-moving party for each party's motion. Plaintiff's motion for summary judgment on this point is denied because there is evidence in the record that the bell on the engine was ringing continuously from the start of the train's trip that morning. Similarly, defendant's motion for summary judgment on this issue is denied because a jury could conclude that the bell was in fact not operating at the time of the accident. Whether the appropri-

ate signal was given in this case is disputed and is, therefore, a question for the jury.

### V. Negligent Entrustment

■ Plaintiff has alleged a cause of action against the railroad for negligent entrustment in allowing the engineer who was involved in the accident to drive the train. Obviously, plaintiff's motivation behind his negligent entrustment theory is to get the engineer's prior driving record into evidence. Such evidence would otherwise be inadmissible under Fed.R.Evid. 404(b), but would be admissible in a negligent entrustment action to show notice on the part of the railroad company.

Defendant has moved for summary judgment on plaintiff's negligent entrustment claim. Defendant asserts that because the engineer was indisputably acting within the scope of employment in driving the train at the time of the accident, respondeat superior applies, and negligent entrustment is, therefore, superfluous. This court agrees and grants defendants motion for summary judgment on this issue.

Although South Carolina apparently has not addressed this issue, the general rule is that when vicarious liability has been admitted, a plaintiff may not proceed on a negligent entrustment theory. *See Hackett v. Washington Metropolitan Area Transit Authority,* 736 F.Supp. 8, 9–11 (D.D.C.1990) (holding that negligent entrustment claim is "unnecessary, prejudicial and redundant" when defendant employer admits that the employee was acting within the scope of employment) (citing *Houlihan v. McCall,* 197 Md. 130, 78 A.2d 661 (1951); *Breeding v. Massey,* 378 F.2d 171 (8th Cir.1967); *Hood v. Dealers Transport Co.,* 459 F.Supp. 684 (N.D.Miss.1978); *Elrod v. G & R Construction Co.,* 275 Ark. 151, 628 S.W.2d 17 (1982); *Tittle v. Johnson,* 124 Ga.App. 706, 185 S.E.2d 627 (1971); and *Plummer v. Henry,* 7 N.C.App. 84, 171 S.E.2d 330 (1969)); *see also Cole v. Alton,* 567 F.Supp. 1084 (N.D.Miss. 1983) (granting summary judgment on a claim of negligent entrustment where vicarious liability was not disputed). The rationale behind this rule appears sound: "permitting proof of previous misconduct would only

serve to inflame the jury and result in the 'danger that the jury might draw the impermissible inference that because the [driver] had been negligent on other occasions he was negligent at the time of the accident.'" *Hackett,* 736 F.Supp. at 9 (quoting *Houlihan,* 78 A.2d at 665).

In the instant case, the defendant railroad has admitted that the engineer was acting within the scope of his employment in driving the train. Accordingly, this court grants defendant's motion for summary judgment on plaintiff's cause of action for negligent entrustment.

### VI. Contributory Negligence and Other Negligence Issues

█ This case presents several remaining negligence issues that are raised either in the plaintiff's complaint or as affirmative defenses. More specifically, these issues are: failure to see the plaintiff, failure to stop the train in time, and contributory negligence. Viewing the evidence in the light most favorable to the non-moving party, the court concludes that each of these issues presents disputed questions of fact for the jury. Therefore, summary judgment on these issues is inappropriate.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's claim for excessive speed is granted. Defendant's motion for summary judgment, and alternative motion to dismiss, on plaintiff's claim for inadequate warning devices is denied. Defendant's motion for summary judgment on plaintiff's claim for failure to control vegetation on the railroad's right of way is granted in part and denied in part. In addition, defendant's motion for summary judgment is granted on plaintiff's claim for negligent entrustment, but denied on the plaintiff's remaining causes of action. Finally, plaintiff's motion for summary judgment for failure to sound required warning signals is denied, and plaintiff's motion to reconsider is also denied.

IT IS SO ORDERED.